IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| NICHOLAS DAVID MOSQUERA, Institutional ID No. 02377827 | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 1:24-CV-00061-BU |
| AMANDA LAYLAND, et al., | § § § | |
| Defendants. | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff NICHOLAS DAVID MOSQUERA, an inmate at the TDCJ Allred Unit, brings this action against Defendants Amanda Layland and Jaime McGowan (collectively, "the Defendants"), alleging that they violated his constitutional rights.[1] Mosquera's claims are subject to judicial screening under 28 U.S.C. §§ 1915, 1915A because Mosquera has been granted leave to proceed *in forma pauperis*, Dkt. No. 22, and he sues government officials, *see* Dkt. No. 20.

For the reasons below, the Court should order Layland to file an answer, motion, or other responsive pleading to Mosquera's Fourteenth Amendment right-of-access-to-courts claim in connection with his criminal appeal. The Court should dismiss all remaining

---

[1] Although Mosquera initially named as defendants FNU Lovelady and FNU McGowen, the Court was able to presumptively identify these defendants through Mosquera's filings and the authenticated records Law Librarian Amanda Layland and Sergeant Jaime McGowan. **The Clerk is directed to conform the docket accordingly**.

claims.

## I.  JURISDICTION

Mosquera brings his claims under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Dkt. No. 20. Venue is proper in the Northern District of Texas, Abilene Division, because Mosquera's claims arise from his incarceration at the TDCJ Robertson Unit located in Jones County, Texas. Dkt. No. 29; 28 U.S.C. § 1391(b)(2). The undersigned has the authority to enter these Findings, Conclusions, and Recommendations after Senior United States District Court Judge Sam R. Cummings transferred Mosquera's case to the undersigned for preliminary screening.[2] Dkt. No. 24; 28 U.S.C. § 636(c)(1). Mosquera has not consented to the undersigned exercising the full jurisdiction of this Court.

## II.  FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favor the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

---

[2] Mosquera's cases was later reassigned to United States District Judge James Wesley Hendrix. *See* Special Order No. 3–355.

Mosquera alleges two constitutional violations he suffered while at Robertson Unit. First, he alleges that Layland denied him his right to access the courts by withholding legal materials and indigent supplies. Second, he alleges that McGowan used excessive force against him when moving him to a different cell.

### A. Access to Courts Allegations

Mosquera first alleges that Layland continually delayed and interfered with his right to access the courts by refusing to provide materials he needed to overturn his wrongful conviction. Dkt. No. 20 at 4. From September 2023 to May 2024, Mosquera filed multiple material request forms that Layland denied. *Id*. at 4; Dkt. No. 29 at 3. The authenticated prison records indicate that the materials commonly requested through these forms include paper, pens, business envelopes, and writ envelopes. These requests were denied despite indicating that he needed the materials to deal with his conviction, his appeals, and his habeas petitions. *Id.*

Mosquera needed legal materials to manage multiple court cases. First, Mosquera appealed a January 2022 criminal conviction he received in Montgomery County. *Id.* Second, Mosquera filed a habeas petition seeking post-conviction relief for the same case. *Id.* Third, Mosquera sought to contest a child support lien filed against him in Harris County. *Id.* Lastly, Mosquera sought to file an additional, unspecified "potential claim" which he desired to investigate or appeal. *Id.*

As a result of Layland denying him legal materials, Mosquera alleges that he was prevented from filing a motion for rehearing and petition for discretionary review in his

criminal appeal.[3] *Id.* Mosquera also alleges that because he was unable to study family law, the child support lien against him was foreclosed on. *Id.*

### B. Excessive Force Allegations

Mosquera also alleges that Defendant McGowan used excessive force against him on or around November 19, 2023.[4] *Id.* at 1. Mosquera alleges that McGowan sprayed him with chemical agent despite Mosquera complying with his instructions.[5] Dkt. No. 20 at 3–4. Mosquera was sprayed during a strip search being supervised by McGowan; despite Mosquera complying with the instructions given, McGowan sprayed him two or three times. Dkt. No. 29 at 1–2. He claims that there was no reason for the strip-out procedure, and it was instead used as a pretext to claim he wasn't following orders and use force against him.[6] *Id.* at 2.

As a result of the use of force, Mosquera suffered skin irritation, along with emotional distress and mental anguish. *Id.* Mosquera alleges that he requested medical treatment after being sprayed, but was not provided a medical assessment or treatment.[7] *Id.*

---

[3] The authenticated prison records contain grievance reports in which Mosquera complains that, because he was denied writing materials, he missed the 15-day deadline to file a motion for rehearing in his appeals case.

[4] The prison records show the incident occurred on November 13, 2023.

[5] In his questionnaire responses, Mosquera suggests that he never said McGowan was the one who sprayed him, and instead claims that McGowan stood by and watched others use bear spray on him. Dkt. No. 29 at 1. Nonetheless, the video footage found in the prison records shows that it was McGowan who sprayed Mosquera.

[6] According to the video recording and prison records, the strip-out occurred because Mosquera refused a cell reassignment, and threatened to kill himself if he was forced to move. Mosquera is not visible for most of the video recording; he is first sprayed when he allegedly refused to spread his buttocks during the strip search. The second and third sprays occurred after Mosquera barricaded the door with his mattress, an act which was visible on camera.

[7] The video recording indicates that, after he was moved to a new holding cell, a medical officer asked Mosquera if he had any injuries. Mosquera initially refused to answer the questions, but eventually replied that he couldn't see and that his chest hurt; it was then explained that those were the result of the chemical agent. Mosquera was also given decontamination instructions.

### III.  THE PARTIES

Mosquera brings claims against two defendants: (1) Amanda Layland, the law library supervisor at the Robertson Unit; and (2) Sergeant Jaime McGowen, a correctional officer. Dkt. No. 20 at 3. Liberally construing Mosquera's pleadings, he has alleged the following claims against the defendants: (1) an Eighth Amendment excessive force claim based on McGowan's unprovoked use of chemical agent, and (2) a Fourteenth Amendment access to courts claim based on Layland's failure to provide materials he needed to make court filings.

### IV.  LEGAL STANDARDS

A court must dismiss a complaint filed *in forma pauperis* or filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly, it lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations'

5

in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–679). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than

6

formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## V.  ANALYSIS

To state a claim under § 1983, Mosquera must plausibly "allege facts showing that a person, acting under color of state law, deprived him of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dept. of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). A convicted prisoner's rights "spring from the Eighth Amendment's prohibition on cruel and unusual punishment" and, in extreme situations, the substantive due process provision of the Fourteenth Amendment. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Estelle*, 429 U.S. at 104.

Here, Mosquera brings both a Fourteenth Amendment access to courts claim and an

7

Eighth Amendment excessive force claim. Below, the undersigned examines each in turn to determine if Mosquera has plausibly alleged a constitutional violation.

### A. Access to Courts Claim

Mosquera first alleges that Layland deprived him of his right to access the courts by denying him law library resources. Prisoners have a constitutionally recognized right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Under the Fourteenth Amendment, failure to provide legal materials through a prison library may violate a prisoner's right to access the courts. *Id.* at 828. However, access to a law library or legal materials is not a freestanding right, but instead a component of the right to due process; thus, this right "encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'" *Johnson v. Rodriguez*, 110 F.3d 299, 310–11 (5th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 356 (1996)).

To bring a Fourteenth Amendment claim based on access to the courts, a prisoner must show that they suffered actual injury. In this context, actual injury requires a showing of "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. In addition, the "injury requirement is not satisfied by just any type of frustrated legal claim[;]" it must arise specifically from (1) a direct appeal of his criminal conviction, (2) a habeas petition, or (3) a civil rights action under § 1983. *Id.* at 354–55.

Here, Mosquera alleges that Layland's refusal to provide legal materials affected three ongoing cases he was litigating: a criminal appeal arising from an allegedly wrongful conviction, a habeas claim contesting his imprisonment for the same conviction, and his

efforts to challenge foreclosure on a child support lien. Dkt. No. 29 at 3. Mosquera also alleges that he sought to investigate a potential additional claim or appeal. *Id*. Under *Lewis*, his efforts to pursue a criminal appeal or habeas relief in his criminal conviction could potentially support a finding of actual injury; the same is potentially true of his anticipated claim, although he does not specify its subject matter. Conversely, the Fourteenth Amendment right to access the courts does not encompass unrelated family law claims; thus, his child support lien cannot support a showing of actual injury.[8]

Of the potentially valid claims, Mosquera has alleged two instances in which it is plausible that he suffered actual prejudice; he alleges that he was prevented from filing a motion for rehearing and a petition for discretionary review in his criminal appeal. *Id*. Mosquera's pleadings do not specify the prejudice he suffered in either instance, one of the grievances in the authenticated records does; there, he states that he missed the 15-day deadline to file for rehearing because the law library withheld requested writing materials.[9] This is sufficient to plausibly allege actual prejudice in a valid criminal appeal. Neither Mosquera's filings nor the authenticated prison record include any allegations that he was unable to request habeas relief or missed any deadlines for the additional claim he sought to pursue; thus, the undersigned concludes there has been no plausible allegation of actual prejudice as to those claims.

---

[8] Notably, Mosquera also alleges that he was unable to contest foreclosure of the lien due to being denied study materials on family law. Dkt. No. 29 at 3. Because the child support lien is not alleged to be related to his criminal conviction or a § 1983 claim, whatever harm he suffered as a result of the foreclosure is irrelevant to his Fourteenth Amendment claim.

[9] In a grievance, Mosquera complains that he missed the fifteen-day deadline to file for rehearing because he was not given the writing materials he requested.

For the reasons above, the undersigned concludes that Mosquera has plausibly alleged a violation of his Fourteenth Amendment right to access the courts because he plausibly suffered actual prejudice in his criminal appeal; however, Mosquera has not plausibly alleged a violation arising from his habeas claims, child support lien, or efforts to pursue an additional claim.

### B. Excessive Force Claim

Mosquera also alleges that McGowan used excessive force against him when spraying him with chemical agent. When evaluating the constitutionality of a prison official's use of force, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Byrd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The subjective intent of such an official is assessed "by reference to the well-known *Hudson* factors." *Byrd*, 48 F.4th at 347 (5th Cir. 2022) (quoting *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016)).

The five non-exhaustive *Hudson* factors include: "(1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response." *Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019) (cleaned up). While it is theoretically possible for one factor to "overshadow the others" such that it is dispositive, this is rarely the case. *Martin v. Seal*, 510 F. App'x 309, 313 (5th Cir. 2013) (per curiam). In particular, there is no requirement that a prisoner suffer significant injury; the assessment turns on the nature of the

force, rather than the extent of the injury. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).

However, the Eighth Amendment does not apply to "*de minimis* uses of physical force," unless it is "of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers* 475 U.S. 312, 327 (1991)). Various Fifth Circuit cases have determined that chemical sprays and analogous uses of force are *de minimis*, absent exacerbating factors. *See Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (stating that chemical spray is a *de minimis* use of force where officer ensured both the level of force and any injury to the inmate were minimal); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (holding that use of fire extinguisher on prison inmate after fire was extinguished was *de minimis* force).

Based on Mosquera's allegations, the undersigned concludes that he has failed to plausibly allege that the force used against him was more than *de minimis*. As noted above, the Fifth Circuit generally considers the use of chemical spray *de minimis*; neither Mosquera's factual allegations nor the use-of-force video indicate any exacerbating factors—such as spraying directly in Mosquera's face, extended spraying, lack of warning before spraying so Mosquera could cover his face, or knowledge that Mosquera suffered from a relevant medical condition—that would justify a departure from this general rule.

The only allegation that potentially suggests McGowan had a malicious or sadistic intent is Mosquera's assertion that he requested medical treatment after being sprayed, but was not provided a medical assessment or treatment. Dkt. No. 29 at 2. But the video shows that after Mosquera was moved to a new holding cell, a medical officer examined him and asked if he had any injuries. Mosquera initially refused to answer the medical officer's

11

questions, but eventually said he could not see, and his chest hurt. Mosquera was given decontamination instructions, and he has not alleged that these instructions were ineffective or that the conditions persisted. The only other injuries Mosquera claims from the chemical agent are skin irritation, emotional distress, and mental anguish. *Id*.

For these reasons, the undersigned finds that Mosquera has failed to plausibly allege that the force used against him anything other than *de minimis*.

Because McGowan's use of force was *de minimis*, there is no constitutional violation unless the use of force was also repugnant to the conscience of mankind. Prior precedent sets a high bar for repugnancy. In the Fifth Circuit, the use of chemical spray is not repugnant when used on noncompliant prisoners and the prisoners are given medical treatment afterwards. *Thomas*, 222 F. App'x at 442; *see also Clemmons v. Greggs*, 509 F.2d 1338 (5th Cir. 1975) (gas canister permissible to subdue unruly prisoners).

Mosquera alleges that he was sprayed despite being compliant with the officers' directions. He does not dispute the accuracy of the video. Per the video, the first dispersal of chemical agent occurs only after officers verbally attempt, for at least four minutes, to gain Mosquera's compliance with strip search procedures. This first dispersal lasts two or three seconds. The second dispersal does not occur until another six minutes passes while officers continue trying to obtain Mosquera's compliance, only to be met with him blocking the cell door with his mattress. This second dispersal also lasts only two or three seconds. The third and last dispersal, lasting approximately five seconds, occurs after officers try for another eight minutes without success to gain Mosquera's compliance. Throughout this 18-minute span of time, officers repeatedly warn Mosquera that chemical agents will be

dispersed if he does not comply and, ultimately, that a five-man team will be assembled to remove him from his cell if necessary. The five-man team eventually had to remove Mosquera from his cell.

Mosquera asks this Court to find it plausible that he was fully compliant this entire time and that the officers, including McGown, made statements on the video that Mosquera was not complying "[a]s a pretext to use to say I refused to comply with orders[.]" Dkt. No. 29 at 2. First of all, Mosquera's theories or subjective beliefs about why the officers made the statements they indisputably made are not well-pleaded facts which this Court is required to accept as true. Second, any inference that the officers here staged this lengthy standoff with Mosquera for nefarious purposes—a standoff consisting of at least four officers trying for at least 18 minutes to persuade Mosquera to comply, followed by the assembly and deployment of a five-man removal team—is not only an unreasonable inference, but one that would require this Court to abandon its common sense.[10]

To be clear, this is not a question of the Court accepting the officers' version of events over Mosquera's version. That is neither done here nor necessary. This is simply a matter of Mosquera's version of events resting on nothing more than his subjective beliefs that he was complying with the officers and that the officers' statements that he was not were nothing but a pretext to escalate the force being used against him.

Subjective beliefs aside, Mosquera's alleged facts are thin and of little help to him.

---

[10] Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc.*, 920 F.3d at 899 (quoting *Iqbal*, 556 U.S. at 679).

Mosquera's sprayed-while-compliant allegations are largely conclusory, supported by few, if any, facts. The totality of his allegations are that (1) McGowan "spray[ed] me with bear spray despite me complying" and (2) McGowan "falsely claimed that I failed to obey his order to strip to justify his use of force" Dkt. No. 20 at 3–4. The Court's questionnaire attempted to flesh out specific facts underlying this claim by asking Mosquera, "What were you doing immediately before McGowen sprayed you?" But in response, Mosquera simply reiterates that he was "complying with the orders given by officers." Dkt. No. 29 at 1–2. Otherwise, Mosquera fails to explain *factually* what he or the officers were doing and saying.

Moreover, the question of compliance is often a matter more of opinion than of fact. Only well-pleaded facts are accepted by the Court as true, not conclusions couched as fact. And when the paucity of facts to support Mosquera's compliance is considered in light of the video, it is difficult for the Court to reasonably draw the inference that Mosquera was plausibly complying.

Finally, even if the Court reaches the *Hudson* factors, that analysis does not plausibly support that McGowan sprayed Mosquera maliciously or sadistically. First, Mosquera's alleged injuries were *de minimis*.[11] Second, the video directly rebuts any allegation that there was no need for the application of force. Third, the allegations fail to plausibly support that the relationship between that need and the amount of force used was

---

[11] The Fifth Circuit has held that the expected effects of being pepper sprayed constitute a *de minimis* injury. *See, e.g.*, *Bradshaw v. Unknown Lieutenant*, No. 02-10072, 2002 WL 31017404 (5th Cir. 2002) (explaining that an inmate's "burning eyes and skin for approximately 24 hours, twitching of his eyes, blurred vision, irritation of his nose and throat, blistering of his skin, rapid heartbeat, mental anguish, shock and fear as a result of the use of mace" after the use of pepper spray was nothing more than a "*de minimis* injury").

disproportional. Fourth, while the officers likely did not perceive a significant threat, their response was also not significant. Lastly, the video directly rebuts any suggestion that the officers did not attempt to temper their response.

For these reasons, the undersigned concludes that Mosquera has failed to plausibly allege that McGowan's use of chemical spray violated his Eighth Amendment rights.

## VI.  CONCLUSION

For the reasons above, the undersigned RECOMMENDS that Layland be ordered to file an answer, motion, or other response to Mosquera's Fourteenth Amendment claim based on her alleged failure to provide legal materials, resulting in Mosquera's inability to file a motion for rehearing in his criminal appeal. The undersigned further RECOMMENDS that Mosquera's remaining claims be DISMISSED for failure to state a claim.

## VII.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the

magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VIII. TRANSFER OF CASE

Having completed the preliminary screening of Mosquera's claims, the undersigned ORDERS that this case be TRANSFERRED to the docket of the United States District Judge and designated as Civil Action No. 1:24-CV-00061-H.

ORDERED this 31st day of December 2025.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE